DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JEFFREY SCHEIBLE,** as Personal Representative of
the **ESTATE OF JANICE JOHNSON,**
Appellant,

v.

**AUDLEY LIVINGSTON BROWN, THEODORE DENAULT,
LYDIA DENAULT, NEA RICHARDSON,** and
**R P FUNDING, INC.,** a Florida corporation,
Appellees.

No. 4D20-1899

[February 9, 2022]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; William W. Haury, Jr., Judge; L.T. Case No. CACE 18-001202 (18).

Daren Stabinski and Daniel Caine of Stabinski and Funt, P.A., Miami, for appellant.

Samuel D. Lopez of Samuel D. Lopez, P.A., Southwest Ranches, for appellee Nea Richardson.

WARNER, J.

Appellant Jeffrey Scheible, personal representative of the estate of Janice Johnson, challenges an order granting a new trial after a jury verdict in favor of the estate. The jury awarded damages to the estate for the negligence of appellee, a notary, who notarized a forged deed which conveyed the deceased's property. The trial court determined that appellant had not proved that appellee's negligence in notarizing the deed was a proximate cause of appellant's damages, because the forged deed was void and had an invalid legal description. We reverse, as the notarization allowed the deed to be recorded and was thereby a proximate cause of the damage to the estate.

Scheible's sister, Joyce Johnson, owned a home in Pembroke Pines at the time of her death in 2008. She left the home to Scheible who allowed

Joyce's daughter (his niece), Janice, to live there rent free, so long as she paid expenses such as taxes and utilities. For two years thereafter, Janice lived in the home with her boyfriend, Audley Brown. Scheible then transferred the property to Janice with a quit-claim deed. Janice and Brown continued to live there until Janice's death in June 2015. Janice passed away intestate, and Scheible was appointed personal representative of Janice's estate.

Scheible discovered that in October 2015, Brown sold the property to third-party purchasers. To Scheible's knowledge, Brown had never owned the property. However, further investigation revealed a quit-claim deed ("original deed") dated February 9, 2015, transferring the property from Janice to Brown. The deed had been notarized by appellee Nea Richardson, a notary, and was recorded July 8, 2015, a month after Janice's death. On July 28, 2015, a quit claim deed marked "corrective deed" was recorded.[1] It appears to be the same quit claim deed as was recorded on July 8th with a lengthier legal description attached. It was neither re-executed nor re-notarized. Finally, a third warranty deed, dated October 26, 2015, and recorded the following day, transferred the subject property from Brown to the third-party purchasers.

After discovering these facts, Scheible filed suit as personal representative of Janice's estate against multiple parties, including Richardson. He claimed damages against Richardson for her negligence in notarizing the deed in the absence of Janice's presence or without properly ascertaining the identity of the individual signing the deed. The case proceeded to trial on the claim against Richardson after the claims against the other defendants were settled.

At trial, Scheible presented a case that the deed was forged, and that Richardson had been negligent in notarizing the deed without properly ascertaining the identity of the person signing it. The original deed and corrective deed were admitted into evidence. A handwriting expert testified that the signature on the deed was not written by Janice. Scheible testified about his relationship with Janice and how he discovered the quit claim deeds and sale of the property. A real estate appraiser testified as to damages.

---

[1] Richardson claimed in argument at trial that the county recorder rejected the original deed because of an improper legal description, which resulted in the corrective deed being recorded. However, both deeds were recorded, and there is no evidence in the record to support this assertion.

2

Richardson moved for a directed verdict, contending that she did not notarize the corrective deed, and it was void. She was therefore not the cause of any loss. The trial court denied the motion. Richardson then testified as to her pattern and practice of notarizing documents. She had no memory of notarizing the document and admitted that she did not record the entire driver's license number of the signatory, although it was her usual practice to do so. She also admitted to differences between the signature and the name on the driver's license. After resting, Richardson moved for directed verdict again, which was denied. The jury was instructed, deliberated, and awarded the estate $247,000 in damages.

After trial, Richardson moved to set aside the verdict and in the alternative for a new trial, arguing that she was not a proximate cause of injury to the estate. Scheible also moved for additur or a new trial as to damages.

The trial court issued an amended order granting Richardson a new trial. The court based its ruling on three independent grounds: 1) the original deed was a forgery and void; thus, "the actions of Defendant Richardson are of no consequence"; 2) the original deed had an incomplete legal description which rendered it void; and 3) the legal description in the deed was corrected without re-executing the corrected deed and without the appropriate formalities; thus it was ineffective to convey an interest in property. The court also found that "Richardson had nothing to do with the correction of the legal description, the failure to execute the corrected deed with appropriate formalities, or the re-recording of the deed." The court denied Scheible's motion for additur, or in the alternative for a new trial on damages only, as moot.

This appeal follows.

Scheible argues that the evidence proved all the elements of negligence, and the court erred in granting the motion for new trial. While an abuse of discretion generally applies to review of orders granting a new trial, an appellate court reviews a trial court's conclusions of law de novo. *See Emmitt v. First Transit, Inc.,* 300 So. 3d 225, 228 (Fla. 4th DCA 2020).

To prove a cause of action for negligence, a plaintiff must prove that the defendant had a legal duty of care to the plaintiff; the defendant breached that duty; the breach proximately caused the plaintiff's injury; and the plaintiff incurred damages as a result. *Bryan v. Galley Maid Marine Prods., Inc.,* 287 So. 3d 1281, 1285 (Fla. 4th DCA 2020).

As a notary, Richardson had a statutory duty to have "satisfactory evidence, that the person whose signature is to be notarized is the individual who is described in and who is executing the instrument." § 117.05(5)(b), Fla. Stat. (2015). Further, section 117.107(9) provides that "[a] notary public may not notarize a signature on a document if the person whose signature is being notarized is not in the presence of the notary public at the time the signature is notarized." § 117.107(9), Fla. Stat. (2015). The breach of that statutory duty creates liability when it is the proximate cause of the damages sustained by the plaintiff. *See Ameriseal of N.E. Fla., Inc. v. Leiffer,* 673 So. 2d 68 (Fla. 5th DCA 1996). There was sufficient evidence to show that Richardson breached her statutory duty. The court, in its ruling, focused on the proximate cause of the loss to Scheible and determined that Richardson could not be the proximate cause.

The test for proximate cause is contained within the standard jury instructions. "Negligence is a legal cause of [loss] [injury] [or] [damage] if it directly and in natural and continuous sequence produces or contributes substantially to producing such [loss] [injury] [or] [damage], so that it can reasonably be said that, but for the negligence, the [loss] [injury] [or] [damage] would not have occurred." Fla. Std. Jury Instr. (Civ.) 401.12(a). In this case, in order for the forged quit claim deed to be recorded, it was required to be notarized. *See* § 695.03(1), Fla. Stat. (2015). Without the notarization of the original quit claim deed, neither it nor the corrective deed were entitled to be recorded. Without recordation of the original quit claim deed, title of the property would not pass to Brown and subsequently to the third-party purchasers. Thus, the negligence of Richardson in failing to properly identify the person signing the deed directly and in natural and continuous sequence contributed to or produced the damage, the loss of Janice's property. *See* Fla. Std. Jury Instr. (Civ.) 401.12(a).

This case is similar to *DeCamp v. Allen*, 156 So. 2d 661 (Fla. 1st DCA 1963). There, a notary falsely notarized the signatures of mortgagors on a mortgage which was recorded. When the mortgagors learned of the mortgage which they alleged that they did not sign, they paid it off and sued the notary for their damages. The trial court found for the mortgagors and entered judgment for damages. The appellate court affirmed, stating "the Court of Record properly found in its judgment that the defendant falsely notarized and acknowledged the purported mortgage; and that because of this false acknowledgment the mortgage was recorded in the public records of the said county, whereby the plaintiff was damaged to the extent of $500." *Id.* at 662. In the same manner, the negligent

4

notarization of the quit claim deed in this case allowed it to be recorded and the property sold to third-party purchasers. Thus, the notarization was a proximate cause of the injuries sustained.

There are circumstances where a notary's negligence has not been considered a proximate cause. For instance, in *Gardner v. Weiler*, 630 So. 2d 670 (Fla. 4th DCA 1994), a seller was fraudulently induced to sign a warranty deed in a scheme devised by her attorney and a buyer. The seller actually signed the instrument, but it was notarized in her absence by the notary. *Id.* at 670. The seller sued and obtained a jury verdict against the notary, arguing that the improper notarization proximately caused her damage because it allowed the instrument to be recorded in the public records, thus aiding the buyer's scheme. We reversed on appeal, holding that the notarization was too tenuously related to the seller's damage or loss to constitute legal proximate cause. *Id.* at 670–71. There, however, although the notarization was technically deficient, the seller admitted signing the deed. Thus, it was not a forgery, and the fraud was committed in how the sale was consummated, not in the recording of the deed.

In contrast, in this case the forged deed, signed by someone other than Janice, was the fraud, for which the notary statutes are designed to protect.

> Throughout the ages, it has been necessary for people to protect their transactions from charlatans. In more recent generations, society has relied on identification documents in disparate circumstances, ranging from admittance to foreign nations, to cashing a bank draft. Where warranted by circumstances, officials of high public trust authenticated certain promises and agreements. The stakes were too high to risk admitting impostors claiming privity to certain transactions. Hence, the venerated and historic office of the notary public has long served this vital need.

*See* Peter J. Van Alstyne, *The Notary's Duty of Care for Identifying Document Signers*, 32 J. MARSHALL L. REV. 1003, 1005 (1999). The notary is the proximate cause of damage to the defrauded property owner where the forged deed is recorded based upon the notary's negligence in failing to confirm the identity of the signatory.

The trial court found that because the deed was forged, it was void and thus Richardson's negligence was of no consequence. The fact that the deed was void, however, does not, as a matter of law, relieve Richardson

of liability where she has been sued in negligence. Even if the deed is of no effect and does not pass title, that does not mean that no damages have resulted from the fact that the forged deed was recorded, and the property sold. In *DeCamp,* the mortgage was not executed by the mortgagors and thus appeared to have been forged, yet the court found the notary liable for damages. Cases from across the country have also found notaries liable in damages for negligently or falsely notarizing forged deeds. *See, e.g., City Consumer Servs., Inc. v. Metcalf,* 775 P.2d 1065 (Ariz. 1989); *McDonald v. Plum,* 90 Cal. Rptr. 822 (Cal. Ct. App. 1970); *Chicago Title Ins. Co. v. LaPierre,* 961 N.Y.S.2d 237 (N.Y. App. Div. 2013); *Lowe v. Wright,* 292 S.W.2d 413 (Tenn. Ct. App. 1956); *Atlas Sec. Co. v. O'Donnell,* 232 N.W. 121 (Iowa 1930); *Commonwealth, to Use of Willow Highlands Co. v. U.S. Fid. & Guar. Co.,* 73 A.2d 422 (Pa. 1950). To hold that the notary is exempt from liability because the deed was forged excuses the notary from the performance of the very essence of duties for which the notary is required.

As to the trial court's conclusion that the original deed had an incomplete legal description and thus was ineffective to pass title, no evidence at trial supported that contention. While the corrected quit claim deed included a different legal description than the original deed, no evidence was presented that the original legal description was deficient. Richardson did mention in argument that the legal description was rejected by the county recorder, but she provided no evidence to the jury on this issue.

Finally, the trial court found that the deed was corrected without having it re-executed and re-notarized, thus making it ineffective to convey title. The deed, however, *did* purport to convey title, as Brown was able to sell to third-party purchasers as a result of recording the corrective deed, causing the estate's damage. This could not have occurred without the original notarization by Richardson. Florida Standard Jury Instruction 401.12(b) provides:

> In order to be regarded as a legal cause of [loss] [injury] [or] [damage] negligence need not be the only cause. Negligence may be a legal cause of [loss] [injury] [or] [damage] *even though it operates in combination with . . . [some other cause] if the negligence contributes substantially to producing such [loss] [injury] [or] [damage].*

(emphasis supplied). Here, Richardson's negligence operated in combination with the fraud of Brown (or someone else) to deprive Janice's

6

estate of the home. It was for the jury to determine whether Richardson's negligence was a proximate cause of damage. The court erred in granting a new trial on this ground as well.

*Conclusion*

For the foregoing reasons, we reverse the order granting new trial and direct the reinstatement of the jury's verdict. While Scheible also argues that the court erred in denying his motion for additur, the trial court did not consider his motion, finding it moot because of the court's order granting a new trial on all issues. We thus do not consider this issue de novo but direct that the trial court shall consider the issue upon remand.

*Reversed and remanded with directions.*

CONNER, C.J., and KUNTZ, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***